IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAD KRAMER,<br><br>                      Plaintiff,<br><br>vs.<br><br>PENN STATE HEALTH,<br><br>                      Defendant. | CIVIL ACTION NO.:<br><br>**JURY TRIAL DEMANDED**<br><br>*ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff, BRAD KRAMER, by and through his undersigned attorneys, brings this civil action for damages against the above-named Defendant, PENN STATE HEALTH, demands a trial by jury, and complains and alleges as follows:

### JURISDICTION AND VENUE

1. This Complaint alleges illegal discrimination on the basis of Plaintiff's age, over forty (40) years of age, in violation of the laws and statutes of the United States of America, specifically, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et. seq.* (hereinafter referred to as "ADEA").

2. This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

3. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District, and under 42 U.S.C. § 2000e-5(f)(3), in that among other things the unlawful discrimination practices that are the subject of this action were committed in this Judicial District.

5. Declaratory relief is sought pursuant to 28 U.S.C. §§2201 and 2202.

## THE PARTIES

6. Plaintiff, Brad Kramer ("Mr. Kramer") is sixty (60) years old and currently resides in Lancaster County, Pennsylvania.

7. Defendant, Penn State Health is a domestic nonprofit corporation owned by Penn State University – operating as a university-affiliated health system that includes the Penn State Health Milton S. Hershey Medical Center ("Hershey Medical Center") and other hospitals and facilities – with its corporate headquarters located at 100 Crystal A Drive, Hershey, Dauphin County, Pennsylvania 17033.

8. At all times relevant and material hereto, PSH owned and operated the Hershey Medical Center located at 500 University Drive, Hershey, Dauphin County, Pennsylvania 17033.

## ADMINISTRATIVE PROCEEDINGS

9. Mr. Kramer initiated a Complaint with the Equal Employment Opportunity Commission ("EEOC"), which was later formalized and docketed as Charge No. 530-2025-04446 on or about March 17, 2025, with instruction to be cross-filed by the EEOC with the Pennsylvania Human Relations Commission ("PHRC") for purposes of being dual filed with the PHRC.

10. Mr. Kramer has been advised of his individual right to bring a civil action by receiving a Dismissal and Notice of Rights from the EEOC, dated September 11, 2025.

11. All necessary and appropriate federal administrative prerequisites to the filing of this action have occurred and have been satisfied.[1]

## STATEMENT OF FACTS

12. Mr. Kramer is a recent graduate from Penn State University pursuing a career in radiology.

13. Prior to earning a radiology degree, Mr. Kramer had careers in public service including serving in the United States Navy for twenty (20) years as a Petty Officer.

---

[1] Mr. Kramer's claims for age discrimination were "dual-filed" with the PHRC on or about March 17, 2025. As such, Mr. Kramer intends to amend his Complaint to include these state claims once they become ripe one year from their PHRC filing date.

14. On or about September 29, 2024, when Mr. Kramer was fifty-nine (59) years old, he made his first application for employment with Penn State Health as a Radiologic Technologist at its Hershey Medical Center.

15. On or about October 7, 2024, as part of the application process, Mr. Kramer was asked to interview for this position.

16. During his education at Penn State University, Mr. Kramer worked as a student intern at Hershey Medical Center in the Radiology Department as part of Penn State University's radiology curriculum – an opportunity that allowed him to form close relationships with Penn State University's staff and gain a deep knowledge and understanding of what was expected of the Radiologic Technologist position.

17. Mr. Kramer's interview went well, as a result of his first-hand experience in Penn State University's Radiology Department.

18. Just two (2) days after his interview, Mr. Kramer was denied the position.

19. Mr. Kramer was surprised by Penn State Health's decision not to hire him because his clinical instructors at Hershey Medical Center always praised him for being a dependable, knowledgeable student intern with excellent patient care.

20. On or about October 14, 2024, Mr. Kramer contacted his former manager and Penn State Health's current Hiring Manager Amy Strong to inquire why Penn State Health ultimately decided on another candidate.

21. Ms. Strong informed Mr. Kramer that nobody in the department had anything good to say about him and that he was "not a good fit for the team."

22. Although disappointed, Mr. Kramer was not surprised by Ms. Strong's blunt response to his inquiry as she had previously questioned his motive for returning to school because of how old he was compared to most students.

23. Moreover, several of the faculty and staff at Penn State University and Penn State Health were often critical of Mr. Kramer and questioned his decision to pursue a radiology career at his age.

24. By way of example, Mr. Kramer was asked by Ms. Strong and Pete Shero, a Chief Radiologic Technologist at Penn State Health, why he would begin a new career in such a specialized field at his age.

25. Additionally, while working at an affiliate of Penn State Health – a mandatory requirement of Penn State University's radiology program – Mr. Kramer routinely faced disparate treatment because of his age when compared to his younger classmates.

26. As a result of this disparate treatment, Mr. Kramer filed a good faith age discrimination complaint against Penn State University before graduating.

27. As Penn State University is an affiliate of Penn State Health, Mr. Kramer believed his complaint to Penn State University would address the disparate treatment he was being subjected to by the leadership of Penn State Health.

28. After making this complaint of age discrimination, Mr. Kramer applied for a CT and Radiology Technologist position at Penn State Health Lancaster Medical Center in late October 2024, another hospital owned and operated by Penn State Health.

29. Once again, Mr. Kramer received an interview for the position due to his impressive credentials and qualifications as a student intern.

30. On or about November 11, 2024, Mr. Kramer was again denied employment by Penn State Health for an open position that suited his qualifications.

31. On or around December 12, 2024, Grady Reicker, the CT Chief Technologist at Penn State Health, told Mr. Kramer that he was his first choice for the position, but that his personal references were supposedly problematic, despite all of Mr. Kramer's personal references being nothing but complimentary.

32. On or about February 6, 2025, after being repeatedly rejected by Penn State Health for direct employment, Mr. Kramer had to resort to finding work through AMN Healthcare - an agency that contracts with hospital systems to place traveling medical professionals into open positions.

33. AMN Healthcare was a premier contractor for Penn State Health.

34. While looking for job placements, Daniel Wallin, a Recruiter for AMN Healthcare, presented Mr. Kramer with a three (3) month placement with Penn State Health at HMC's Radiology Technologies Department.

35. However, due to Penn State Health's hiring policies, Mr. Kramer explained to Mr. Wallin that he would not be considered for positions within Penn State Health for the next six (6) months because of his previous rejections for employment.

36. Mr. Wallin reassured Mr. Kramer that he had assisted similar applicants in gaining employment with Penn State Health regardless of their age and previous rejections.

37. As such, Mr. Wallin attempted to get Mr. Kramer a placement with Penn State Health at its Hershey Medical Center but was told that "[w]e would like to defer this candidate. Brad was a student here and applied for a position, but we felt he was not a good fit with our personnel."

38. Although Mr. Wallin requested a further explanation given his recruitment responsibilities, Penn State Health was unwilling to give a specific reason for Mr. Wallin to provide Mr. Kramer as to why he was not a "good fit."

39. It is evident from Mr. Kramer's knowledge, education, competency, and work experience that he was more than qualified to work for Penn State Health, and that but for his age he would have been a successful candidate for employment at one of its hospitals in the field of radiology.

40. As such, Penn State Health subjected Mr. Kramer to unlawful retaliation by not offering him employment because of his age and after he engaged in the protected activity of making a good faith report of age discrimination to Penn State University as a student intern prior to his applications for employment.

## COUNT I

### ADEA VIOLATIONS
*Age Discrimination – Disparate Treatment*
*(Plaintiff v. Defendant)*

41. All prior paragraphs are incorporated herein as if set forth fully below.

42. At all relevant times hereto, Plaintiff was forty (40) years or older and, therefore, a member of a class of individuals protected against discrimination and harassment on the basis of his age when applying for employment with Defendant.

43. Plaintiff was subjected to discrimination on the basis of his age in violation of the ADEA, as described above.

44. The discrimination on the basis of age to which Plaintiff was subjected would have detrimentally affected any reasonable person in his position.

45. Defendant created, permitted, tolerated, encouraged, and fostered a hostile, intimidating, demeaning, degrading and demoralizing environment on the basis of Plaintiff's age at its Hershey Medical Center where he worked as a radiology student intern, which discrimination was ongoing throughout his employment.

46. Defendant's actions and inactions, as more fully described above, were sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's attempt to gain employment with Defendant after graduating, thereby constituting unlawful discrimination on the basis of his age.

47. Defendant's failure to maintain a workplace and hiring process free from discrimination on the basis of Plaintiff's age was intentional, malicious, and in reckless indifference to his protected federal rights.

48. This discrimination on the basis of his age was specifically known to Defendant's management, including those with firsthand knowledge of Plaintiff's age and specifically responsible for hiring at Defendant, none of whom took any meaningful or effective action to remediate this unlawful conduct.

49. Defendant likewise failed to exercise reasonable care to prevent, correct, and/or remedy this unlawful conduct.

50. As a consequence of this age discrimination supported and encouraged by Defendant's actions and failures to act, Plaintiff was subjected to emotional distress, humiliation, ridicule, and a negative effect on his ability to gain employment, all of which manifested itself in mental and physical distress, injury, and damage.

51. As a result of this discrimination on the basis of Plaintiff's age and Defendant's inaction to remedy the same, Plaintiff has suffered economic loss, including loss of earnings, emotional distress, humiliation, and embarrassment, a loss of self-respect and confidence, and has been subjected to great damage to his career and professional reputation and standing.

52. Plaintiff has and continues to suffer irreparable harm as a result of Defendant's violation of his protected federal rights.

**WHEREFORE**, Plaintiff, Brad Kramer, seeks the damages against Defendant, Penn State Health, as set forth in the *Ad Damnum* clause of this Complaint, *see infra*, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT II

## ADEA VIOLATIONS
*Retaliation*
*(Plaintiff v. Defendant)*

53. All prior paragraphs are incorporated herein as if set forth fully below.

54. As set forth above, as a result of Plaintiff's complaint of discrimination on the basis of his age, Defendant retaliated against Plaintiff by refusing him employment despite having available positions that suited his qualifications.

55. As a result of Defendant's actions, Plaintiff has suffered economic loss, including loss of earnings, emotional distress, humiliation, and embarrassment, a loss of self-respect and confidence, and has been subjected to great damage to his career and professional reputation and standing.

**WHEREFORE**, Plaintiff, Brad Kramer, seeks the damages against Defendant, Penn State Health as set forth in the *Ad Damnum* clause of this Complaint, see infra, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## *AD DAMNUM* CLAUSE/PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Brad Kramer, seeks the damages against Defendant, Penn State Health, as set forth in the *Ad Damnum* clause of this Complaint, and that it enters an Order as follows:

a. Defendant is to be permanently enjoined from discriminating, harassing, and/or retaliating against Plaintiff on the basis of his age, and/or any basis prohibited under applicable federal law;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating, harassing, and/or retaliating against Plaintiff on the basis of his age and/or any basis prohibited under applicable federal law, and is to be ordered to promulgate an effective policy against such discrimination, harassment, and retaliation and to adhere thereto;

c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination and/or retaliation at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded liquidated damages as provided for under the ADEA;

e. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

f. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

g. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of any applicable caps on certain damages set forth in applicable law;

h. Plaintiff is to be granted such additional injunctive or other relief as he may request during the pendency of this action in an effort to ensure the Defendant does not engage - or ceases engaging - in illegal retaliation against the Plaintiff or other witnesses to this action; and

i. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **WEISBERG CUMMINGS, P.C.** |
| Dated: <u>November 6, 2025</u> | <u>*/s/ Derrek W. Cummings*</u><br>Derrek W. Cummings, Esquire<br>PA I.D. #: 83286<br>dcummings@weisbergcummings.com |

<u>*/s/ Larry A. Weisberg*</u>
Larry A. Weisberg, Esquire
PA I.D. #: 83410
lweisberg@weisbergcummings.com

<u>*/s/ Steve T. Mahan*</u>
Steve T. Mahan, Esquire
PA I.D. #: 313550
smahan@weisbergcummings.com

<u>*/s/ Michael J. Bradley*</u>
Michael J. Bradley, Esquire
PA I.D. #: 329880
mbradley@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
(717) 238-5707
(717) 233-8133 (Fax)

*Counsel for Plaintiff*